STATE OF VERMONT

ENVIRONMENTAL COURT

|  | } |  |
|---|---|---|
| In re: Appeal of JAM Golf, LLC | } | Docket No. 69-3-02 Vtec |
|  | } |  |
|  | } |  |

Decision and Order

Appellant JAM Golf, LLC appealed from a decision of the Development Review Board (DRB) of the City of South Burlington regarding a proposed ten-lot subdivision. Appellants are represented by William A. Fead, Esq.; the City of South Burlington is represented by Amanda Lafferty, Esq.; Interested Persons James Marc Leas, Jeffrey Allen, Julia Allen, Marie Ambusk, William Rozich, Elizabeth Rozich, and John Kane appeared and represented themselves. Ten days of evidentiary hearing were held in this matter before Merideth Wright, Environmental Judge. A site visit was taken in advance of the hearing with the parties and their representatives. The parties were given the opportunity to submit written memoranda and requests for findings. Upon consideration of the evidence as illustrated by the site visit, and of the written memoranda and requests for findings filed by the parties, the Court finds and concludes as follows.

Highlands Development Company and Appellant JAM Golf, LLC, both owned by James A. McDonald, are the successor owners and developers of a 450-acre planned residential development (PRD) known as the Vermont National Country Club (VNCC), in the Southeast Quadrant (SEQ) zoning district of the City of South Burlington. The VNCC development consists of an 18-hole golf course, with its associated clubhouse and other facilities, and 296 residential housing units, some developed as town houses and some as single-family homes. Highlands owns the portions of the VNCC permitted for residential development; Appellant owns the portions of the property used for the golf course. R &

1

L Taft Building, Inc. proposes to purchase the parcel proposed for the subdivision at issue in the present appeal if permits are issued for it; therefore, the parties refer to this project as "the Taft subdivision."

The VNCC development as a whole is located both on the east side and the west sides of Dorset Street. The portion on the west side of Dorset Street is bounded on the south by Nowland Farm Road, on the west by the Larkin and Swift Estates residential developments, and on the north by Swift Street. The portion on the east side of Dorset Street is bounded on the north by a large parcel of land owned by the City, known as the Calkins parcel, on the east by the Butler Farm and Oak Creek Village residential developments, and on the south by Old Cross Road. Golf Course Road runs in a north-south direction, approximately bisecting the portion of VNCC to the east of Dorset Street. Single-family homes line both sides of Golf Course Road; the northerly end of Golf Course Road joins the loop of Park Road, where both roads are developed with townhomes. Golf course fairways for holes 11, 12, 13 and 14 are located to the east of the Golf Course Road and Park Road residences. Access to a community recreation path on VNCC property is through the Butler Farm subdivision.

The area at issue in the present application is an area of woodland occupying a wooded knoll located to the east of Golf Course Road, six to seven acres in area, bounded by the fairways for holes 11, 13 and 14. It is on a ridge or height of land between Dorset Street and the eastern edge of the Butler Farm development, and contains particularly mature and tall trees. It therefore is a distinct wooded feature in the landscape, and forms part of the skyline of the easterly half of the VNCC property, although it is not large in size in comparison to the VNCC property.

The VNCC development was initially approved in 1996, by the then-Planning Commission, as a PRD of a golf course and 230 residential units. Other than being shown on the plans as an undeveloped portion of the overall golf course and PRD development,

2

no specific condition of the original approval required the proposed project property to be preserved, either in its wooded state or in an undeveloped state. Accordingly, Appellant was authorized to apply to develop this portion of the property. However, any application for development of this portion of the property must meet the zoning and subdivision standards in effect at the time the application is filed.

In 1998, Appellant applied to amend the PRD plans by shifting seven previously-approved lots on Golf Course Road sixty feet to the south, to create a 60-foot-wide portion of property retained by Appellant between two lots (170 Golf Course Road (Lot #86) and 194 Golf Course Road (Lot #87)) to allow the potential for "access to the area between holes 11, 13, and 14 for potential future development." In 1999 the Planning Commission approved the amendment, also describing the purpose of the amendment as "the reason for shifting the lots is to provide access to lands to the north for possible future development." The approval of this space between lots #86 and #87 only created the potential for the present application; it does not create any presumption or vested right in favor of the present application, nor does it affect the criteria that must be met for approval of the present application.

This area was woodland when the surrounding area, now developed as VNCC, was primarily farmland. The existing woodland associated with the project proposal is roughly in the shape of a left-handed mitten, with the 'thumb' extending between the 14th hole fairway and the 13th hole green. It is a mature woodland, containing a mix of evergreens and deciduous trees, including mature hard-mast-producing trees such as hickory, butternut, beech and oak species; soft-mast-producing trees such as hophornbeam and black cherry; and pines, which produce a nut. The hard and soft mast produced by these species is particularly important as a source of high-energy food for wildlife, as it can be converted to fat storage to enable wildlife to survive the winter.

The project woodland also has an undergrowth of dense shrubs, and young

3

saplings, including those that produce berries and drupes that are a food source for wildlife. Both because of the shelter afforded by the woodland and because of the nuts, acorns and fruits or drupes produced by the trees, shrubs, and other woodland plant species, the project woodland is an important resource for wildlife habitat, and it is adjacent to wetland and pond areas providing water for wildlife as well as cattails, which are another source of food. The "thumb" section of the woodland contains shrubs and tall pine trees, although it has become thin in places due to the loss of some tall pines in an ice storm several years before the application.

The wooded knoll descends most steeply to a lower elevation on proposed lots 4, 3 and 10, while the remaining lots contain more gentle slopes. A second densely wooded area (the East Woodland), containing both deciduous and evergreen trees, is located on gentler slopes to the east of the 13th hole; it is not proposed for any development in this application.

In the present application, Appellant applied for preliminary subdivision approval and site plan approval for a ten-lot, single-family residential subdivision to be served by a road to a cul-de-sac in the center of the wooded knoll, with a private drive extension to serve lots 4, 5 and 6 (the three most northerly lots). The "thumb" portion of the woodland is proposed to remain retained land, and is proposed to be planted primarily with evergreens and some deciduous species to fill out the area damaged by the ice storm as the trees mature.

The project area woodland provides an essential link in the corridor or pathway by which wildlife travel through and survive within this otherwise developed portion of the Southeast Quadrant. Aside from the yards of residential lots, and roadways dividing the landscape, the landscape contains former agricultural fields converted to a combination of groomed golf course fairways and surrounding open land, and scattered hedgerows, patches of woodland, and patches of wetland. The connectivity of these features allows

4

species such as deer, fox, turkey, raccoon, squirrel, rabbit, and small rodents, as well as birds, reptiles and amphibians, to survive and reproduce in this area.

Other subdivisions with larger lots in woodlands of larger total size have succeeded in preserving the woodland areas, with houses placed in modest clearings. However, this particular woodland does not contain the area or volume to support the intrusion of a roadway and this number of lots this small and this close together, and still maintain the functionality of the woodland for wildlife or as a feature in the landscape.

Appellant has performed an excellent survey of the existing trees in the project area. If as large a project as a ten-lot subdivision were to be approvable for the area, Appellant's tree preservation and planting plan is an excellent effort at mitigating the impact from the proposed clearing of trees for the project. Moreover, Appellant proposes to restrict landowners' clearing of trees on the periphery of the lots, although the enforcement of such limitations may be difficult given the potential for views to be achieved if more of the trees were cut. However, as large a project as a ten-lot subdivision cannot be approved for this particular woodland area under the applicable regulations.

Despite the proposed mitigation, the proposed project will place a roadway and ten houses in the heart of this small woodland. It would thin the trees in the area of the roadway and the house sites so that the woodland feature would be altered in the landscape to a group of wooded house lots. The elimination of the density of trees and undergrowth and the presence of human and pet occupancy would reduce the functionality of the woodland for wildlife shelter and food, and reduce its functionality within the wildlife corridor extending to its north and south.

The project as proposed at this density and surrounding a roadway therefore does not meet §26.151(g) of the Zoning Regulations, which requires PRD design to "protect important natural resources including streams, wetlands, scenic views, wildlife habitats and special features such as mature maple groves or unique geologic features. The project

woodland is an important wildlife habitat in a pivotal location connecting habitat to the north with habitat and open land to the south. It is also an important special feature as a mature grove of mixed species on a knoll in the landscape. Despite the fact that the golf course fairways and former agricultural fields are also "open land," this feature provides a very different kind of important visual or scenic interest in the landscape, worthy of protection[1] under this section. Further, the proposal as designed does not meet §26.151(*l*) for the same reasons, as the municipal plan for the Southeast Quadrant requires residential development to be designed to protect wildlife corridors and habitat, and to protect scenic views.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that approval of the ten-lot Taft subdivision, as proposed, is DENIED, without prejudice.

Dated at Berlin, Vermont, this 29th day of June, 2006.

_____
Merideth Wright
Environmental Judge

---

[1] This decision does not address whether a smaller number of lots, different locations with respect to the core of the project woodland, or a different design, could qualify for approval under this section.

6